**IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)**


**APRIL ADEMILUYI,**
     **Plaintiff**

**v.**                              **Case No. 8:24-cv-3616**

**CARLA ANDREWS, et al.,**
     **Defendants.**


## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant hereby respectfully requests that the Court dismiss all counts against her in Plaintiff's First Amended Complaint (hereinafter "Amended Complaint"), namely, Count II-Tortious Interference with a Contract and Count III-Intentional Infliction of Emotional Distress, with prejudice, for failure to state a claim for relief, for lack of subject matter jurisdiction because Plaintiff lacks standing, and award Defendant attorney's fees in connection with the above referenced matter. The reasons in support of Defendant's Motion are set forth in the attached Memorandum of Points and Authorities.


Dated: February 20, 2025                Respectfully submitted,
                                        **By Shavon J. Smith, Esq.**
                                        */s/ Shavon J. Smith*
                                        Shavon J. Smith, Esq.
                                        MD District Bar No: 21421
                                        THE SJS LAW FIRM, PLLC
                                        1775 I Street, NW, Suite 1150
                                        Washington, DC 20005
                                        Telephone/Fax: (202) 505-5309
                                        sjsmith@thesjslawfirm.com
                                        *Counsel for Carla Andrews*

1

# TABLE OF CONTENTS

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM. 1

DEFENDANT'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM……..4

INTRODUCTION……………………………………………………………………...4

BACKGROUND………………………………………………………………………5

ARGUMENT…………………………………………………………………………...9

STANDARD OF REVIEW……………………………………………………………9

I. Plaintiff's Amended Complaint Fails to State a Claim For Relief Because it Does Not Allege Sufficient Facts to Outline the Legal Elements of a Viable Tortious Interference with a Contract Claim……………………………………………………………………………………..10

A. Plaintiff Did Not Have a Valid Contractual Relationship With Planet Depos Which Defendant Was Aware of or Could Have Interfered With……………………………………………... 10

B. Even if Plaintiff Had a Valid Contractual Relationship with Planet Depos, Defendant Did Not Intentionally Interfere With That Relationship Because Defendant Delivered an Accurate Stenographic Transcript Which Planet Depos Contracted Her For……………………………... 12

II. Plaintiff's Amended Complaint Fails to State a Claim For Relief Because it Does Not Allege Sufficient Facts to Outline the Legal Elements of an Intentional Infliction of Emotional Distress Claim…………………………………………………………………………………………..16

A. Defendant's Alleged Conduct, Even if True, is not Sufficiently Extreme and Outrageous to Sustain an IIED Claim………………………………………………………………………... 16

III. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Because She Does Not Allege Sufficient Facts to Establish Standing……………………………………………………18

A. Under Both the Constitutional and Prudential Standing Principles, Plaintiff Cannot Establish Standing Because She Cannot Show an Injury In Fact for Either of her Causes of Action and the

Alleged Injury is not Traceable to Defendant Andrews…………………………………………… 19

CONCLUSION……………………………………………………………………………………..21

IN THE U.S DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

APRIL ADEMILUYI,
   **Plaintiff**

v.           **Case No. 8:24-cv-3616**

CARLA ANDREWS,
   **Defendant.**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM**

## INTRODUCTION

This action is brought by Plaintiff, Ms. April Ademiluyi, who claims Defendant, Ms. Carla Andrews, tortiously interfered with her contract with a third party, Planet Depos, LLC (a court reporting company) and caused her emotional distress. Plaintiff Ademiluyi alleges that Defendant Andrews, while working as an independent contractor-stenographer for Planet Depos, colluded with Plaintiff's adversaries (judges in Prince George's County Maryland, and Plaintiff's former colleagues) to fabricate deposition transcript (in connection with a case involving Plaintiff Ademiluyi) and also intentionally destroyed audio recordings of the transcript which caused her harm. Specifically, Plaintiff Ademiluyi alleges that Defendant Andrews digitally recorded the subject deposition and later created a fabricated stenographic file, in collusion with Plaintiff's adversaries. Plaintiff Ademiluyi makes this claim against Defendant Andrews although Defendant had no contact with Plaintiff's adversaries, nor Plaintiff, prior to the subject deposition and had never appeared before them in any capacity.

As demonstrated below, Plaintiff's Complaint fails to make a claim for tortious interference

with a contract because Plaintiff had no contractual relationship with the third party, Planet Depos, LLC and even if there was, Defendant acted in no way to interfere with such relationship. Further, Plaintiff's Complaint fails to state a claim for Intentional Infliction of Emotional Distress because Defendant's alleged conduct, even if true, is not sufficiently extreme and outrageous. Finally, because Plaintiff suffered no injury in fact, she has no standing.

For the aforementioned reasons, the Court should dismiss all of the counts in the Complaint for failure to state a claim for relief under Rule 12(b)(6), and for lack of subject matter jurisdiction under Rule 12(b)(1).

## **BACKGROUND**

### I.     **Defendant, Carla Andrews' Background**

Carla Andrews is an entrepreneur who, after graduating, has worked as a stenographer, first as a court employee for a couple of years through an agency and then as a freelancer. Ms. Andrews has successfully run her freelance stenography business for about 26 years and ensures that she maintains the highest professional standards by participating in continuing education within her field. She is notably certified by the NCRA as a Registered Professional Reporter (RPR), a testament to her competency and integrity, has top secret clearance, and is in the process of acquiring higher level clearance—Top Secret-SCI, Full Scope with Polygraph. In her extensive 30-year long career, Ms. Andrews has provided stenographer services on Capitol Hill and in many courtrooms across Virginia and Maryland, but never in Prince Georges' County courts and never by soliciting for reporting jobs from individual judges. Ms. Andrews has only ever provided stenographer services; Ms. Andrews has never provided digital court reporting services.

### II.     **Defendant's Relationship with Planet Depos, LLC**

Planet Depos, LLC ("Planet Depos") is a court reporting company that offers court

reporting (stenographic and digital), videography, videoconferencing and interpretation services in the United States and abroad. Ms. Andrews has worked with Planet Depos since 2013 as an independent contractor to provide court reporting and transcription services to Planet Depos.

### III.    Ms. Andrews' Assignment to the Subject Deposition

Planet Depos assigned the subject deposition to Ms. Andrews by sending a Job Assignment Sheet (see Exhibit A) to her the night before the deposition—after Planet Depos inquired and Ms. Andrews indicated her availability for a job; this was Planet Depos' protocol for randomly assigning court reporters since Ms. Andrews began contracting with them. The Job Assignment Sheet indicated that the "Client" was Goodell, DeVries, Leech & Dann, LLP, whom Plaintiff hired as her counsel, listing the entity's name, address, and contact information. It also identified the party to be deposed, the location, time, and other relevant details of the assignment. Prior to an assignment the Job Assignment Sheet, like the one received here, is the only information Ms. Andrews receives about the assignment.

### IV.    Defendant's Set-up for Depositions

Whenever she is assigned a deposition, Ms. Andrews typically arrives about 30 minutes prior to start time in order to set up her stenotype machine and other required equipment for the deposition. For self-evaluation purposes, Ms. Andrews also sets up a USB drive connection from her stenotype machine to her laptop so that she can see her notes in real time as she types—this connection automatically creates an audio file ("Computer Sync File") on her laptop. Also, Ms. Andrews personally records audio of each deposition with a digital recorder for her own use in order to ensure clarity and accuracy of the final transcript. Once she has confirmed such accuracy, Ms. Andrews often records over the tape for other jobs. As a stenographer, Ms. Andrews is only responsible for providing a stenographic transcript of each deposition; any other records are strictly

for her personal use, much like an attorney's "work product" (see Exhibit B).

## V. Day of the Deposition

On February 13, 2024, the subject deposition was scheduled to take place at Planet Depos' Greenbelt, Maryland office at 10 AM Eastern Time. Present at the deposition were the following people: Carla Andrews, April Ademiluyi, Ademiluyi's counsel, Judge Michael Pearson (the deponent), and deponent's counsel, along with four other persons related to the underlying case. Ms. Andrews neither knew anything of the case underlying the deposition, nor any of the parties present and/or involved in the deposition despite her 30 years as a stenographer. In fact, Ms. Andrews had had no contact with either party prior to the deposition and has had no contact with them since the deposition, except through Planet Depos.

After Ms. Andrews' arrival to set up her equipment, Plaintiff Ademiluyi entered the room and asked about audio recording of the deposition. Ms. Andrews, who was surprised by the question since she was a stenographer and not a digital court reporter, told Ms. Ademiluyi that she would be entitled to an audio recording if the meeting were over Zoom and if Ms. Ademiluyi ordered digital recording. Ms. Andrews further explained that with in-person depositions, Ms. Ademiluyi would only be entitled to a stenographic transcript. With Ms. Ademiluyi's counsel to her right and Ms. Ademiluyi next to her counsel, Ms. Andrews began to record the deposition with her stenotype machine.

## VI. The Underlying Case Involved in the Subject Deposition

Plaintiff Ademiluyi is a former Maryland judge who was recently removed from the bench by the Supreme Court of Maryland because the Maryland Commission on Judicial Disabilities found that she engaged in egregious misconduct. Convinced that her fellow judges, Sheila T. Adams, Daneeka V. Cotton, Michael R. Pearson, conspired to cause her removal from the bench,

Plaintiff Ademiluyi filed a lawsuit against the judges and the Chair of the Maryland Commission on Judicial Disabilities, Hon. Anne K. Albright (Case No. 8:23-cv-03526, pending in this Court), claiming First Amendment Retaliation stemming from her Plaintiff's alleged whistleblowing on the judges' corrupt practices. The subject deposition in this matter is related to her removal. Plaintiff Ademiluyi subsequently petitioned to court to amend her complaint in Case No. 8:23-cv-03526 to add further counts against the judges and to add Ms. Andrews as a fifth defendant, which the court denied. The court's denial of her petition to add Ms. Andrews to Case No. 8:23-cv-03526 prompted Plaintiff to file an individual suit against Ms. Andrews, which Plaintiff has subsequently amended.

**VII.    Events that Occurred After the Day of the Deposition**

On February 27, 2024, Ms. Andrews uploaded the required stenographic transcript of the deposition and invoice to RBweb, an app used by Planet Depos for transcript submissions to ensure privacy. Ms. Andrews' completely fulfilled her job obligations when she uploaded the transcript to RBweb. That same day, Planet Depos made the transcript available to the receiving party identified to Planet Depos by Goodell, DeVries, Leech & Dann, LLP. Thereafter, Planet Depos also made the transcript available to the deponent's receiving party. Ms. Andrews was not and has never been involved in the process of making transcripts available to the relevant parties. On March 4, 2024, Ms. Ademiluyi informed Planet Depos that she had questions about portions of the transcript which Planet Depos related to Ms. Andrews. This was especially unusual to Ms. Andrews since Ms. Ademiluyi was not the deponent. After checking with her digital recorder and finding that the relevant portions that Ms. Ademiluyi asked of were incomplete (due to overwritten files for space saving), Ms. Andrews checked her Computer Sync File and determined that although not entirely clear, the audio verified the accuracy of the transcript and specifically the

two places where Ms. Ademiluyi had concerns. Notably, on March 13, 2024,  the deponent reviewed the transcript of his testimony for accuracy, found it to be accurate and signed the same attesting to the accuracy. Despite Ms. Andrews' diligence, Ms. Ademiluyi unreasonably insisted on obtaining the complete audio file in Ms. Andrews' possession. Planet Depos acknowledges that the audio materials are personal property and work product  of Ms. Andrews and that she was under no obligation to release it to Ms. Ademiluyi (see Exhibit B). Following the foregoing events, Ms. Ademiluyi filed this suit.

## **ARGUMENT**

### **STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(1) mandates a court to dismiss a complaint when that court lacks subject matter jurisdiction over the case. For a court to have subject matter jurisdiction over a case, the plaintiff must have standing to sue because a defect of standing is likewise a defect in subject matter jurisdiction. *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977 (D. Md. 2002). Therefore, a challenge to a plaintiff's standing is properly raised as a challenge to the court's subject matter jurisdiction via a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See id.*

Fed. R. Civ. P. 12(b)(6) also requires that a complaint be dismissed if it does not satisfy the requirement of Fed. R. Civ. P. 8(a) that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." That statement must contain sufficient facts to outline the legal elements of a viable claim for relief or to allow the court to draw the reasonable inference that these elements exist. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. 556 U.S. 662, 678.

I.   **Plaintiff's Amended Complaint Fails to State a Claim For Relief Because it Does Not Allege Sufficient Facts to Outline the Legal Elements of a Viable Tortious Interference with a Contract Claim.**

Plaintiff's Amended Complaint fails to state a claim for relief because it does not allege facts that satisfy the legal elements of a tortious interference with a contract claim. A claim for tortious interference with a contract has four elements: 1) the existence of a valid contractual or other business relationship between the plaintiff and a third party; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) resulting damages. *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510 (D. Md. 2023). Here, Plaintiff's Amended Complaint would need to allege sufficient facts to show that 1) Plaintiff, April Ademiluyi, had a valid contractual relationship with Planet Depos; 2) Defendant, Carla Andrews, had knowledge of that contractual relationship; 3) Defendant, Carla Andrews, intentionally interfered with that contractual relationship; and 4) Plaintiff, April Ademiluyi, suffered damages as a result of the interference.

Plaintiff's Amended Complaint is deficient in establishing a tortious interference cause of action because she claims to have had a contractual relationship with Planet Depos and that Defendant was aware of it, which is incorrect—Planet Depos only had a contractual relationship with Plaintiff's counsel, Goodell, DeVries, Leech & Dann, LLP. Further, Plaintiff claims that Defendant interfered with her purported contractual relationship, which is again incorrect because even if such a relationship existed, Defendant acted in no way to interfere with it; Defendant simply did her job. Consequently, Plaintiff could not have suffered any damages to sustain a tortious interference with a contract claim.

**A. Plaintiff Did Not Have a Valid Contractual Relationship With Planet Depos Which Defendant Was Aware of or Could Have Interfered With.**

Plaintiff did not have a valid contractual relationship with Planet Depos which Defendant was aware of or could have interfered with. Under Maryland law, a valid contract or contractual relationship requires an offer, acceptance, sufficient consideration, and agreement by the contracting parties to be bound by the terms of the contract. *See Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519 (D. Md. 2013). In a tortious interference with a contract claim, the plaintiff must allege a valid contractual relationship in order to sustain the claim; otherwise, it is to be dismissed. *See Ultrasound Imaging v. Am. Soc. of Breast Surgeons*, 358 F. Supp. 2d 475 (D. Md. 2005) (finding that plaintiff could not make out a claim for tortious interference with contract when they never had a contract with the defendant because where "there is no valid contract, one cannot be said to have interfered with its existence") (quoting *Fraidin v. Weitzman*, 611 A.2d 1046, 1057 (citations omitted); *Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724 (D. Md. 2017) (stating that plaintiff's case for interference with contract failed on the first element because the subject contract had expired and no longer existed).

In the instant case, no valid contractual relationship existed between Plaintiff Ademiluyi and Planet Depos. Rather, Planet Depos had a contract with Goodell, DeVries, Leech & Dann, LLP, Plaintiff's counsel, as was clearly indicated in the "Client" section of the Job Assignment Sheet from Planet Depos to Ms. Andrews; Plaintiff admits to this fact herself in her Amended Complaint. Compl. ¶51 ("Judge Ademiluyi's counsel engaged Planet Depos on her behalf"). As was the case in *Ultrasound Imaging*, here, Ms. Ademiluyi cannot in good faith allege the existence of a contractual relationship between herself and Planet Depos which would sustain her claim against Ms. Andrews. Neither can she allege a prospective contractual relationship with Planet Depos when there are no facts to support such a claim.

The facts of this matter show that there was no valid contractual or prospective contractual business relationship between Plaintiff Ademiluyi and Planet Depos which Defendant Andrews knew of; Ms. Andrews was only aware of Planet Depos' contractual relationship with the listed client on her Job Assignment Sheet—Goodell, DeVries, Leech & Dann, LLP. Accordingly, Defendant could not have interfered with a non-existent contract.

> **B. Even if Plaintiff Had a Valid Contractual Relationship with Planet Depos, Defendant Did Not Intentionally Interfere With That Relationship Because Defendant Delivered an Accurate Stenographic Transcript Which Planet Depos Contracted Her For.**

Even if Plaintiff had a valid contractual relationship with Planet Depos, Defendant did not intentionally interfere with that contractual relationship because Defendant delivered an accurate stenographic transcript which Planet Depos contracted her for. Interference in a tortious interference with a contract action occurs when a person induces or causes a third person not to perform the contract. *See Total Recon Auto Ctr. v. Allstate Ins. Co.*, 705 F. Supp. 3d 510 (D. Md. 2023) (finding that defendant's conduct interfered with plaintiff's contracts with its customers because defendant's conduct prevented plaintiff from performing under existing repair contracts). On the other hand, there is no interference when the accused defendant acts legitimately in the normal course of business. *See id.* ("[interference requires] an intentional act that was independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." (citation omitted)). This sentiment of the U.S. District Court for the District of Maryland is illustrated in the District of Columbia's persuasive ruling in *Bennett Enterprises, Inc. v. Domino's Pizza*, 45 F.3d 493 (D.C. Cir. 1995). In *Bennett*, the plaintiff (franchisee of a Domino's pizza store) introduced testimony of a conversation between the defendant (a Domino's franchise consultant), and a third party (prospective buyer), discussing the operational problems of the said

pizza store to evidence the defendant's interference with a prospective contractual relationship. *Id.* The court there found that the plaintiff "has established at most that Domino's, through the legitimate disclosure of truthful information in the ordinary course of business [through the franchise consultant], contributed to [plaintiff's] failure to sell its troubled enterprise for as high a price as it wished." *Id.*

Not only does a defendant have to interfere with a contractual relationship, such interference must also be intentional. *See Total Recon,* 705 F. Supp. 3d 510.  Furthermore, a general intent to interfere is insufficient to sustain a claim; rather, the plaintiff must establish a specific purpose for interference. *See Webb v. Green Tree Servicing, LLC*, Civil Action No. ELH-11-2105 (D. Md. Dec 09, 2011); *Geduldig, et. al. v. Bosner, et. al*, 743 A.2d 247 (Md. App. 1999). "Specific purpose" has been expatiated on by the D.C. courts' persuasive case law as a strong showing of intent or motive to prevent the performance of the contract or continuation of a business relationship. *Genetic Sys. Corp. v. Abbott Labs.*, 691 F.Supp. 407, 422-23 (D.D.C. 1988); *Bennett,* 45 F.3d 493 (dismissing a tortious interference claim because "nothing in the evidence supports more than the rankest speculation that Domino's or anyone acting on its behalf harbored any ill motive or intent to disrupt [plaintiff's] economic advantage").

Here, Plaintiff Ademiluyi claims that Defendant Andrews intentionally caused Planet Depos to not perform its contractual obligation to provide honest court reporting services by fabricating deposition transcript and destroying deposition audio. That assertion is entirely false. On the contrary, Ms. Andrews delivered exactly what she was contracted for, which does not constitute interference. Ms. Andrews is akin to the defendant in *Bennett,* 45 F.3d 493, who acted legitimately in the normal course of business by providing operational information about a Domino's franchise; Ms. Andrews provided her stenographer services pursuant to her contract with

Planet Depos, and performed her duties as a stenographer by taking notes and uploading the transcript of the subject deposition per the Job Assignment Sheet. These steps constitute the duties of a stenographic reporter working for Planet Depos in the ordinary course of business and Ms. Andrews complied with them. Nothing in the contract between Planet Depos and Ms. Andrews or the Job Assignment Sheet required Ms. Andrews to produce audio recordings of her deposition. Since 2013 when she became an independent contractor for Planet Depos, Ms. Andrews has only ever produced stenographic transcripts and has never been required to turn over her personal recording materials. In fact, Ms. Andrews' obligation was to Planet Depos and she fulfilled that obligation when she uploaded an accurate transcript to RBweb. It is irrational for Ms. Andrews to have destroyed the audio when Planet Depos told her in email correspondence that she was not required to release her personal audio and had the option to release or not release the said audio. Therefore, even if a valid contract existed between Plaintiff and Planet Depos, Defendant Andrews did not induce or cause Planet Depos not to perform the contract.

Ms. Ademiluyi's allegation of tortious interference is predicated on collusion between her adversaries and Ms. Andrews. For the collusion allegation to be true, Plaintiff's adversaries would have had to know that Plaintiff's counsel would contact Planet Depos or any other agency that Ms. Andrews worked for to ensure she was the reporter for the particular deposition and Ms. Andrews would have had to already agree to fabricate the transcript and somehow known that she would receive the job for the said deposition. Yet, Plaintiff's Amended Complaint does not allege anything of the sort—perhaps due to the ridiculous and speculative nature of such assumptions. Rather, to make a connection between Ms. Andrews and the deponent, Plaintiff Ademiluyi simply states that "Reporter Andrews directly or indirectly had a relationship with Judges Adams and Cotton" Compl. ¶91—a purely speculative assertion. Not only were all the parties involved in the

deposition strangers to Ms. Andrews, she did not have any contact or communications with the parties before or after the deposition was over and so could not have had the opportunity to conspire to create a later, fabricated transcript or corrupted audio file (especially when she was under no obligation to turn in any audio files). Further, to prove the alleged fabrication of the subject deposition transcript, Plaintiff claims that the transcript matched the Investigative Counsel's summary of deponent's statement; just because the stenographic transcript matched the Investigative Counsel's report, against Plaintiff Ademiluyi's interest, does not mean that Defendant Andrews tampered with the transcript. It simply meant that Ms. Andrews accurately reported what Judge Pearson testified to in the deposition. Notably, the deponent whose testimony is at issue in the transcript signed the transcript as an accurate representation of his deposition; evidently, Ms. Andrews performed the job she was contracted for and accurately reported as the deponent's signature confirmed.

Even more telling is Plaintiff Ademiluyi's lack of a strong showing of Ms. Andrews' intent in her Amended Complaint. Plaintiff Ademiluyi's claim that Ms. Andrews fabricated the transcript so that Judge Cotton could hire Ms. Andrews for generously paid court reporting services since "Reporter Andrews is currently seeking better job opportunities" Compl. ¶92, falls short of the specific purpose or strong motive requirement; it is entirely speculative and has no factual basis in Plaintiff's Amended Complaint, similar to *Bennett*. As previously stated, Ms. Andrews has never provided stenographer services in Prince Georges' County courts and has never received jobs by soliciting individual judges. It is possible that Ms. Ademiluyi could not see Ms. Andrews' stenotype machine in her lap during the deposition because she was seated next to her counsel and not directly beside Ms. Andrews. Even so, that does not substantiate a claim of collusion to sustain a tortious interference claim. It is clear that Ms. Andrews has been unfairly dragged into a legal

battle between Maryland judges which has nothing to do with her. Not only is Plaintiff's Amended Complaint insufficient to plead the requisite intent, it is also the type of conclusory, the-defendant-unlawfully-harmed-me accusations which falls short of Rule 8's standard.

**II.    Plaintiff's Amended Complaint Fails to State a Claim For Relief Because it Does Not Allege Sufficient Facts to Outline the Legal Elements of an Intentional Infliction of Emotional Distress Claim.**

Plaintiff's Amended Complaint fails to state a claim for relief because it does not allege sufficient facts to outline the elements of an intentional infliction of emotional distress claim. A claim for intentional infliction of emotional distress (IIED) has four elements: (1) The conduct at issue is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 746 (D. Md. 1996). In Maryland, recovery under IIED has been "severely limited…to the most extreme cases of uncivilized behavior" *id. at 746* to be "meted out sparingly…for those wounds that are truly severe and incapable of healing themselves." *Wade v. Foster*, Civil Case No. 17-01371-JMC (D. Md. Aug 21, 2017) (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991). Plaintiff's Amended Complaint is deficient in establishing an IIED cause of action because the alleged conduct of Ms. Andrews, even if accepted as true, is not sufficiently extreme and outrageous.

**A.  Defendant's Alleged Conduct, Even if True, is not Sufficiently Extreme and Outrageous to Sustain an IIED Claim.**

Defendant's alleged conduct, even if true, is not sufficiently extreme and outrageous to sustain an IIED claim. IIED requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society" *Littleton v. Prince George's County, Md.*, 797 F. Supp. 2d 648,

659 (D. Md. 2011) (quoting *Hines v. French*, 852 A.2d 1047, 1060 (Md. Ct. Spec. App. 2004).

Accordingly, the U.S. District Court for the District of Maryland has repeatedly cited *Figueiredo-Torres v. Nickel*, 584 A.2d 69 (1991) (where a psychologist, while acting as plaintiff's and his wife's marriage counselor, had sexual relations with the plaintiff's wife); *B.N. v. K.K.*, 538 A.2d 1175 (1988) (where a physician did not inform a nurse, who he had sex with, that he had an insurable sexually transmitted disease); *Young v. Hartford Acc. & Indem.*, 303 Md. 182, 492 A.2d 1270 (1985) (where an insurer insisted that plaintiff submit to a psychiatric examination in a calculated effort to harass the plaintiff and to either force her to abandon her claim or to commit suicide) as examples of cases involving sufficiently extreme and outrageous conduct.

However, cases involving "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not rise to the extreme and outrageous standard. *Wade v. Foster*, Civil Case No. 17-01371-JMC (quoting *B.N. v. K.K.*, 538 A.2d 1175); *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008) (a false television report did not constitute extreme and outrageous conduct); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462 (D. Md. 2002) (workplace harassment…almost never rises to the [requisite] level of outrageous"); *Collier v. Ram Partners, Inc.*, 159 F.Supp.2d 889 (D. Md. 2001) (incessant use of racial invective in work place is not extreme and outrageous conduct).

In this case, Plaintiff Ademiluyi alleges that the alleged fabricated transcript of the deposition created a "false narrative to discredit Ademiluyi's rape experience, mischaracterize her as mentally unfit and cause job loss, severe emotional distress, and embarrassment." Compl. ¶60. Simply looking to Plaintiff Amended Complaint, it is clear that Ms. Andrews' alleged conduct is more akin to the cases of indignities illustrated in *Wade v. Foster*, *Interphase Garment Solutions, Arbabi, and Collier* which are not sufficiently extreme and outrageous as opposed to the

outrageous conduct exhibited in *Figueiredo-Torres*, *B.N. v. K.K.*, *and Young*. Therefore, Plaintiff

has not sufficiently alleged IIED and the Court must dismiss the claim.

### III.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Because She Does Not Allege Sufficient Facts to Establish Standing.

This court lacks subject matter jurisdiction over Plaintiff's claim because she does not

allege sufficient facts to establish standing. Standing is a threshold jurisdictional question which

must be addressed prior to and separate from the merits of a claim. *See Herlihy v. Ply-Gem*

*Industries, Inc.*, 752 F.Supp. 1282 (D. Md. 1990). Federal courts follow the case and controversy

requirement of Article III of the U.S. Constitution and federal jurisprudence in addressing

standing. *See Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018). Constitutional

standing requires: 1) an injury in fact that is 2) fairly traceable to the challenged action of the

defendant and 3) likely to be redressed by a favorable decision. *R.V. v. Mnuchin*, 570 F. Supp. 3d

322 (D. Md. 2021). Furthermore, courts apply prudential principles, like third-party standing, to

ensure that a plaintiff's claim for relief is based on her own legal interests and not a third party's.

*See Equal Rights Ctr. v. Abercrombie & Fitch Co.*, Civil Case No. JFM-09-3157 (D. Md. Nov 29,

2010). A plaintiff who asserts third party standing must allege 1) an injury in fact to the plaintiff;

2) a close relationship with the third party; and 3) some hindrance to the third party's ability to

protect its own interests. *See id.* A plaintiff bears the burden of proving standing, *see Nicholas v.*

*Green Tree Servicing, LLC*, 173 F. Supp. 3d 250 (D. Md. 2016), which Plaintiff cannot do under

either theory of standing because she does not allege facts that constitute an injury in fact.

### A.    Under Both the Constitutional and Prudential Standing Principles, Plaintiff Cannot Establish Standing Because She Cannot Show an Injury In Fact for Either of her Causes of Action and the Alleged Injury is not Traceable to Defendant Andrews.

For standing, a plaintiff must sufficiently allege that she suffered an injury in fact that is a) concrete (actually exists) and particularized (affects plaintiff in personal and individual way) and b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 311 (Cal. 2011) (finding an injury in fact when plaintiffs purchased "Made in U.S.A." locksets which were made in foreign countries because plaintiffs did not receive the benefit of their bargain). A plaintiff's claim of an injury in fact cannot rely on a defendant's failure to act when that defendant owed the plaintiff no such obligation. *See UMC Dev., LLC v. Dist. of Columbia*, 120 A.3d 37, 38 (D.C. 2015) ("the injuries claimed [cannot rest on the premise that] the District did not approve CMC Realty's request to transfer title [because] the District had no obligation to do [so]"). Additionally, a plaintiff's mere interest, economic or otherwise, in a problem is not sufficient to render a plaintiff an aggrieved or injured party. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (finding no injury in fact to plaintiff, because plaintiff could not show any harm that defendant's actions would cause its members despite plaintiff's special interest in the subject of the suit).

Plaintiff Ademiluyi does not sufficiently allege any real injury that personally affected her. As Section IB established, because Ms. Andrews provided exactly what she was contracted for - an accurate stenographic transcript of the deposition of Judge Pearson, confirmed and signed by Judge Pearson as an accurate representation of his deposition testimony, no injury exists here. *Kwikset Corp.*, a persuasive opinion by the Supreme Court of California provides a direct contrast to the case here. Unlike *Kwikset Corp.* where the plaintiffs did not receive the benefit of their bargain, Ms. Ademiluyi's counsel received exactly the services they hired Planet Depos for and which Ms. Andrews delivered. This case presents an even weaker case because Ms. Ademiluyi

was not a party to the contract between Planet Depos and her counsel and therefore cannot claim to not have received the benefit of her bargain (*See* Section I(A)). Accordingly, *Sierra Club* dictates that Ms. Ademiluyi's mere or even special interest in the relevant deposition and transcript (because it was taken in connection with a case involving her) does not make her an aggrieved party with standing—especially when no harm occurred.

Moreover, in accordance with the persuasive case of *UMC Dev.*, 120 A.3d 37, Ms. Ademiluyi's claim of an injury in fact cannot be predicated on Ms. Andrews' failure to provide her with an audio recording of the deposition because Ms. Andrews was not obligated to turn such personal materials over under her contract with Planet Depos. As Section I details, Ms. Andrews' only obligation, as a stenographer, was to provide an accurate stenographic transcript of Judge Pearson's testimony, which she complied with. Ms. Ademiluyi's claim in her Amended Amended Complaint that Planet Depos provides audio recordings of depositions that are recorded with digital reporter software (as was the case in the second deposition) fails to realize that unlike the second deposition which would have been conducted by a digital court reporter, Ms. Andrews conducted the subject deposition as a stenographer—which requires a stenotype machine, with the stenographer's discretion whether or not to record audio solely for personal use. Had Ms. Ademiluyi made this distinction, she would realize that she has no actionable injury in fact particularly with regard to the alleged destroyed audio which would entitle her to relief.

Finally, Ms. Ademiluyi's Intentional Infliction of Emotion Distress claim states that Ms. Andrews' alleged actions (her "fabricated" transcript of Judge Pearson's testimony in connection with CJD 2023-005 before the Commission on Judicial Disabilities) caused Ms. Ademiluyi to lose her job. However, by Ms. Ademiluyi's own admission in her Amended Complaint, this supposed injury of job loss cannot be attributed to Ms. Andrews' transcript because "on May 7, 2024, the

Commission stayed CJD 2023-005" Compl. ¶49; if the proceedings in CJD 2023-005 were stayed,

Ms. Andrews' transcript could not have caused the Commission on Judicial Disabilities to remove

Plaintiff Ademiluyi from the bench as a judge. Accordingly, even if the alleged injury occurred, it

is not traceable to Defendant Andrews and therefore, Plaintiff Ademiluyi lacks standing.

## **CONCLUSION**

For the aforementioned reasons, Defendant respectfully requests that the Court grant her

Motion to Dismiss all claims in Plaintiff's Amended Complaint with prejudice and award

attorney's fees in connection with this matter.

Dated: February 20, 2025                                 Respectfully submitted,
                                                         **By Shavon J. Smith, Esq.**
                                                         */s/ Shavon J. Smith*
                                                         Shavon J. Smith, Esq.
                                                         MD District Bar No: 21421
                                                         THE SJS LAW FIRM, PLLC
                                                         1775 I Street, NW, Suite 1150
                                                         Washington, DC 20005
                                                         Telephone/Fax: (202) 505-5309
                                                         sjsmith@thesjslawfirm.com
                                                         *Counsel for Carla Andrews*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2025, a true and correct copy of the foregoing was sent via the courts electronic filing system and first-class mail, postage pre-paid, to the following:

> Ray Shepard, Esq.
> The Shepard Law Firm, LLC
> 122 Rivera Drive
> Pasadena, MD 21122
>
> Allen Dyer, Esq.
> Law Office of Allen R. Dyer
> 13340 Hunt Ridge
> Ellicott City, Maryland 21042
> *Attorneys for Plaintiff*
>
> Kathryn Hummel
> Assistant Attorney General
> 200 St. Paul Place, 17th Floor
> Baltimore, Maryland 21202
> *Attorney for Defendants*,
> *Hon. Judge Shelia Tillerson Adams,*
> *Hon. Judge Daneeka V. Cotton, and*
> *Hon. Judge Michael R. Pearson*

> */s/ Shavon J. Smith*
> Shavon J. Smith, Esq.
> THE SJS LAW FIRM, PLLC
> 1775 I Street, NW, Suite 1150
> Washington, DC 20005
> Telephone/Fax: (202) 505-5309
> sjsmith@thesjslawfirm.com
> *Counsel for Defendant Carla Andrews*

**Exhibits**

Exhibit A - Job Assignment Sheet
Exhibit B - Email Correspondence