## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| APRIL T. ADEMILUYI, | * |
| *Plaintiff*, | * |
| v. | * |
| | *   Case No. 8:24-cv-03616-LKG |
| CARLA N. ANDREWS, et al., | * |
| *Defendants*. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Judge Sheila Tillerson Adams, Judge DaNeeka V. Cotton, and Judge Michael R. Pearson submit this memorandum in support of their motion to dismiss the amended complaint (ECF No. 12).

Anthony G. Brown
Attorney General of Maryland

*/s/ Kathryn Hummel*

_____
Kathryn Hummel
Federal Bar No. 21991
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland  21202
khummel@oag.state.md.us
(410) 576-6341
(410) 576-6055 (facsimile)
*Attorneys for Defendants*
*Judge Sheila Tillerson Adams,*
*Judge DaNeeka V. Cotton, and*
*Judge Michael R. Pearson*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................2

FACTS ..............................................................................................................3

    THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND.......................3
    JUDICIAL CONDUCT AND DISCIPLINE OF THE STATE'S JUDGES .........................3
    THE MARYLAND COMMISSION ON JUDICIAL DISABILITIES ...............................3
    THE JUDICIAL INQUIRY BOARD.....................................................................4
    THE JUDICIAL DISCIPLINARY PROCESS ..........................................................4
    APRIL T. ADEMILUYI ..................................................................................6
    THE ALBRIGHT SUIT ...................................................................................8
    THE CURRENT SUIT ....................................................................................9

ARGUMENT ....................................................................................................10

I.    STANDARD OF REVIEW. ..........................................................................10

II.    ALL CLAIMS AGAINST THE JUDGE DEFENDANTS ARE BARRED BY CLAIM
    PRECLUSION..........................................................................................11

III.    THE FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED. ...............13

    A.    The First Amendment Claim is Barred by Issue Preclusion.................13

    B.    The First Amendment Claim is Barred by Judicial Immunity..............13

    C.    The Amended Complaint Fails to State a Claim of First Amendment
        Retaliation.................................................................................16

IV.    THE JUDGE DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY, OR IN THE
    ALTERNATIVE, QUALIFIED IMMUNITY. ......................................................19

V.    THE JUDGE DEFENDANTS ARE ENTITLED TO STATE PERSONNEL IMMUNITY ......19

VI.    THE AMENDED COMPLAINT FAILS TO SUFFICIENTLY PLEAD ANY TORT CLAIM
    AGAINST THE JUDGE DEFENDANTS. ...........................................................20

    D.    The Amended Complaint Fails to Sufficiently State a Claim of Tortious
        Inference with a Contract............................................................21

    E.    The Amended Complaint Fails to State a Claim of Intentional Infliction
        of Emotional Distress..................................................................23

CONCLUSION..................................................................................................24

## INTRODUCTION

On May 6, 2024, the Supreme Court of Maryland removed April T. Ademiluyi from judicial office based on campaign issues, discourteous behavior toward staff, non-compliance with disciplinary guidance, and various ethical violations. *Matter of Ademiluyi*, 488 Md. 45, 109, 116, 123, 128-30 (2024). As part of her disciplinary proceedings, Ms. Ademiluyi alleged that she was a victim of retaliation by her colleagues, and the Supreme Court of Maryland deemed that claim to be unsubstantiated. *Id*. at 88, 91-92, n.22, 116.

While her disciplinary matters were pending, Ms. Ademiluyi filed *Ademiluyi v. Albright, et al*., Case No. 8:23-cv-03526-LKG (the "Albright Suit"), alleging First Amendment retaliation against the Judge Defendants and against Judge Anne K. Albright, the chair of one of several State bodies involved in her various disciplinary matters. Subsequent to the defendants moving for dismissal, Ms. Ademiluyi sought to amend the Albright Suit by adding Carla Andrews as a defendant, a stenographer from the depositions in one of the underlying disciplinary matters, and by adding causes of action for tortious interference with a contract and intentional infliction of emotional distress. Ms. Ademiluyi's request to amend the Albright Suit was denied. On March 10, 2025, the Albright Suit was dismissed. *Ademiluyi v. Albright*, No. 23-CV-03526-LKG, 2025 WL 754485 (D. Md. Mar. 10, 2025).

The day after Ms. Ademiluyi's request to amend the Albright Suit was denied, she filed the above-captioned suit against Ms. Andrews, alleging tortious interference with a contract and intentional infliction of emotional distress. She later amended this suit to add a First Amendment retaliation claim against the Judge Defendants. The Albright Suit and the current suit contain similar and related factual allegations, and both suits relate to various State judicial disciplinary

matters.  Significantly, both suits' retaliation claims pertain to the same operative alleged actions on the part of the Judge Defendants, *i.e.*, participation in Ms. Ademiluyi's disciplinary matters.

This suit should be dismissed based on preclusion, various immunities, and Ms. Ademiluyi's failure to properly plead any viable cause of action.

## FACTS

### The Circuit Court for Prince George's County, Maryland

The State's circuit courts are its highest common-law and equity trial courts, with jurisdiction over civil, criminal, and juvenile cases.  Md. Const. art. IV, § 20; Md. Code Ann., Cts. & Jud. Proc. § 1-501.  Each of the State's twenty-three counties and its one city (Baltimore City) has one circuit court.

### Judicial Conduct and Discipline of the State's Judges

The State's judges, including its circuit court judges, are subject to the provisions of the Maryland Code of Judicial Conduct, codified in the Maryland Rules in Title 18, Chapter 100.  The State's judges are also subject to the Maryland Rules on Judicial Discipline, codified in the Maryland Rules at Title 18, Chapter 400.  The judicial disciplinary process is a multi-layered process that involves several State entities, including the Maryland Commission on Judicial Disabilities, the Judicial Inquiry Board, and the Supreme Court of Maryland, which is the State's highest court.

### The Maryland Commission on Judicial Disabilities

The Maryland Commission on Judicial Disabilities (the "Commission") was constitutionally created.  Md. Const. art. IV, § 4A.  Its purpose is to "maintain public confidence in the integrity, independence, and impartiality of judges and the judicial system."  Md. Rule 18-401(b).  The Commission does this by enforcing conduct standards, balancing independence and

accountability, reassuring and enlightening the public, providing a forum for investigations, responding to sanctionable conduct, assisting judges who have committed minor and/or unintended violations, and "protecting judges from false, unfounded, and inaccurate accusations that can damage their reputations." *Id.*

The Commission has eleven members who are appointed by the Governor of Maryland, with the advice and consent of the State Senate. Md. Const. art. IV, § 4A. Judge Anne K. Albright is currently the Chair of the Commission. Generally, the Commission has the power to investigate complaints against judges, conduct hearings concerning complaints, issue reprimands, and make recommendations to the Supreme Court of Maryland. Md. Const. art. IV, § 4B.

The Commission employs an Executive Counsel and an Investigative Counsel. Md. Rule 18-411. Investigative Counsel is an attorney who is appointed by the Commission and approved by the Supreme Court of Maryland. Md. Rule 18-411(e)(1). As outlined below, Investigative Counsel has various powers and duties in the judicial disciplinary process, including making written reports and recommendations to the Judicial Inquiry Board and the Commission. Md. Rule 18-411(e)(2).

**The Judicial Inquiry Board**

The Judicial Inquiry Board consists of two judges, two attorneys, and three members of the public; the Supreme Court of Maryland appoints all its members. Md. Rule 18-412. It participates in the judicial disciplinary process by monitoring the investigative process and making recommendations to the Commission. *Matter of White*, 451 Md. 630, 636-37 (2017).

**The Judicial Disciplinary Process**

The Supreme Court of Maryland created the detailed rules that govern the judicial disciplinary process. *Matter of White*, 451 Md. 630, 636 (2017). When the Commission receives

a properly filed complaint of judicial misconduct, it dockets the complaint. Md. Rule 18-421(e). The Commission refers all cognizable complaints to Investigative Counsel. Md. Rule 18-421(a). Investigative Counsel may then make an inquiry by interviewing witnesses, reviewing public records and transcripts, and communicating with the judge. Md. Rule 18-421(f). An inquiry may result in either the file being closed or an investigation. *Id*.

If a complaint proceeds, Investigative Counsel has 90 days to investigate, which may be extended for good cause. Md. Rule 18-422(a)(6). Upon request, the Judicial Inquiry Board may authorize Investigative Counsel to issue subpoenas to compel the attendance of witnesses and the production of documents. Md. Rule 18-409.1(a). When an investigation is complete, Investigative Counsel must write a detailed written report. Md. Rule 18-422(b). The report must include factual information, legal analysis, and recommendations. Md. Rule 18-422(b)(2). Investigative Counsel's recommendation may be (1) dismissal without a letter of cautionary advice, (2) dismissal with a letter of cautionary advice, (3) a conditional diversion agreement, (4) a reprimand, (5) the filing of charges, or (6) retirement of the judge based on a finding of disability. *Id*.

If Investigative Counsel recommends the filing of charges, she submits her report to the Judicial Inquiry Board. Md. Rule 18-422(b)(3)(C). The Judicial Inquiry Board must then review the Investigative Counsel's report; it may also meet informally with the judge, convene a peer review panel, and/or direct Investigative Counsel to conduct further investigation. Md. Rule 18-423. The Judicial Inquiry Board then submits a report and recommendation to the Commission and serves a copy on the judge and Investigative Counsel, who each have an opportunity to respond. *Id*.

The judge may then request a non-evidentiary appearance before the Commission. *Id*. Upon reviewing the Judicial Inquiry Board's report and any responses thereto, the Commission

must then recommend either (1) further investigation, (2) a remand to the Judicial Inquiry Board, (3) dismissal, (4) a conditional diversion agreement, reprimand, or retirement, (5) the entering of a written consent disposition, or (6) the filing of charges. Md. Rule 18-423(f)(3).

If the Commission finds probable cause to believe sanctionable conduct has occurred, and it thus recommends the filing of charges, the Commission may direct Investigative Counsel to file charges. Md. Rule 18-431(a). Investigative Counsel serves the judge with the charges, who then has an opportunity to respond. Md. Rule 18-431. The judge has various procedural rights, Md. Rule 18-832, and specific discovery rules govern the process. Md. Rule 18-433.

The Commission then conducts a recorded evidentiary hearing. Md. Rule 18-434. If the Commission finds that the judge committed sanctionable conduct, and other dispositions are not appropriate, the Commission can issue a reprimand or refer the matter to the Supreme Court of Maryland. Md. Rule 18-435(e). At that time, the Supreme Court of Maryland dockets the matter for expedited consideration. Md. Rule 18-437(a).

The judge has 30 days to file exceptions to the Commission's findings, conclusions, and recommendations. Md. Rule 18-437(b). The Commission then has an opportunity to respond to the exceptions and the Supreme Court of Maryland may schedule briefing and a hearing. Md. Rule 18-437. The Supreme Court of Maryland may impose the disposition recommended by the Commission, dismiss the proceeding, or remand the matter for further proceedings. *Id*. The Supreme Court of Maryland may also remove the judge from the bench. Md. Const. art. IV, § 4B.

**April T. Ademiluyi**

Subsequent to an election, Ms. Ademiluyi was sworn in as a Judge in the Circuit Court for Prince George's County, Maryland, on December 18, 2020. *Ademiluyi*, 488 Md. at 61. Almost immediately, there were issues with her training compliance, attendance, timeliness, and

professional interactions.  *Id*. at 64-65.  On January 5, 2022, within the context of a disciplinary matter that was not made public at the time, CJD 2021-042, the Commission issued a letter of cautionary advice to Ms. Ademiluyi; however, the concerns expressed therein, and others, persisted.  *Id*. at 72-77; (ECF No. 12 ¶¶ 49, 51.)

After having undergone various layers of procedure and investigation in accordance with the Maryland Rules, Investigative Counsel filed public charges against Ms. Ademiluyi in relation to a second disciplinary matter, CJD 2022-079, on June 29, 2023.  *Id*. at 56-57.  A public hearing was held in this matter on December 13, 14, 20, and 21, 2023, at which Investigative Counsel called 16 witnesses.[1]  *Id*. at 58-59.  On February 15, 2024, the Commission issued its findings of fact, conclusions of law, order and recommendations, which found that Ms. Ademiluyi committed sanctionable conduct related to several areas of concern, including but not limited to campaign activity, non-compliance with training, and interactions with her law clerk and other staff.  *Id*. at 59, 109, 116, 123, 128-30.  The Commission recommended censure, suspension, and probation, and referred the matter to the Supreme Court of Maryland.  *Id*. at 59-60.

As part of this second disciplinary matter, Ms. Ademiluyi alleged that she was a victim of retaliation by her colleagues.  *Id*. at 88.  The Supreme Court of Maryland found this claim to be unsubstantiated.  *Id*. at 92 n.22.  Subsequent to oral argument pertaining to CJD 2022-079, the Supreme Court of Maryland ordered that Ms. Ademiluyi be immediately removed from office as

---

[1] The witnesses for Investigative Counsel at this hearing were Judge Shelia Tillerson Adams, Judge Judy L. Woodall, Judge Gladys M. Weatherspoon, Judge John P. Davey, Judge William A. Snoddy, Judge Makeba Gibbs, Judge Cathy Serrette, Delegate C.T. Wilson, Saran Myers-Martin, Esq., State's Attorney Aisha Braveboy, Jessica Ochoa, Esq., Mark Atwood, Esq., Linda Randall, Jennifer Ventola, Ebonye Caldwell, and LaCresha Buchanan.  Findings of Fact, Conclusions of Law, Order and Recommendations, at 3, available at *https://www.courts.state.md.us/sites/default/files/import/cjd/pdfs/cjd2022-079admeiluyifindingsandrecommendations.pdf* (last visited March 13, 2025). Judge Cotton and Judge Pearson were not witnesses at this hearing.  *Id.*

a judge, effective May 6, 2024. *Id.* at 144. In a subsequent and thorough opinion, the Supreme Court of Maryland affirmed the Commission's conclusions that Ms. Ademiluyi violated various tenants of the Judicial Code. *Id.* at 109-130.

As a result of Ms. Ademiluyi being removed from office, the Commission effectively stayed a third disciplinary matter related to Ms. Ademiluyi's conduct, CJD 2023-005, in which public charges had been filed on November 15, 2023.[2] As part of the discovery process in the third disciplinary matter, Ms. Ademiluyi's then-counsel took the deposition of Judge Pearson on February 13, 2024, and Ms. Andrews was hired by Ms. Ademiluyi's then-counsel to provide a stenographic transcript of the in-person deposition. (ECF Nos. 12, 23-1, 23-3.) Ms. Ademiluyi's removal from the bench was unrelated to CJD 2023-005. *See Ademiluyi*, 488 Md. at 55 (listing CJD 2022-079, exclusively, as the at-issue disciplinary matter).

**The Albright Suit**

Ms. Ademiluyi filed the Albright Suit against the Judge Defendants on December 29, 2023, amended the suit on January 1, 2024, and then amended it again on May 16, 2024, to add the Commission and its chair Judge Albright as defendants. *Ademiluyi v. Albright*, No. 23-CV-03526-LKG, 2025 WL 754485, at *4 (D. Md. Mar. 10, 2025); (Case No. 23-CV-03526-LKG, ECF Nos. 1, 4, 11). Ms. Ademiluyi voluntarily dismissed all claims against the Commission on July 26, 2024. (Case No. 23-CV-03526-LKG, ECF No. 22.) On November 7, 2024, Ms. Ademiluyi filed a motion for leave to amend, seeking to add the tort claims of tortious interference with a contract and intentional infliction of emotional distress, and to add as a defendant Ms. Andrews. (Case No. 23-CV-03526-LKG, ECF No. 39.) The Court denied Ms. Ademiluyi's request to amend on

---

[2] Notice Regarding Public Hearing in the Matter of Judge April T. Ademiluyi CJD 2023-005, available at *https://www.courts.state.md.us/sites/default/files/import/cjd/pdfs/cjd2023-005ademiluyinoticepublichearingonmay10.pdf* (last visited March 13, 2025).

December 12, 2024. (Case No. 23-CV-03526-LKG, ECF No. 61.) On March 10, 2025, the Court granted in part the defendants' respective motions to dismiss, dismissed the Albright Case, and closed it. *Albright*, 2025 WL 754485, at \*12. The Court found that the Judge Defendants were entitled to judicial immunity and that Judge Albright was entitled to sovereign immunity. *Id*. at \*10-12.

### The Current Suit

On December 13, 2024, one day after this Court denied Ms. Ademiluyi's motion for leave to amend the Albright Suit, Ms. Ademiluyi filed the current suit against Ms. Andrews for tortious interference with a contract and intentional infliction of emotional distress. (ECF No. 1.) On January 30, 2025, Ms. Ademiluyi amended the suit to add a First Amendment retaliation claim against the Judge Defendants. (ECF No. 12.)

In Count I, Ms. Ademiluyi alleges that when she "filed a complaint with the FBI alleging harassment" because she believed "a judge" was "responsible for using a convicted rapist to send her letters to torment her about her experience of being drugged and raped," the Judge Defendants allegedly retaliated against her by "mischaracterizing [her] performance and character for the purpose of causing charges to be initiated and pursuing the CJD 2022-079 and 2023-005 cases alleging sanctionable misconduct against [Ms.] Ademiluyi." (ECF No. 12 ¶¶ 94, 97.) She requests compensatory damages, punitive damages, and attorneys' fees. (ECF No. 12, at 21.)

In Count II, Ms. Ademiluyi alleges tortious interference with a contract against Ms. Andrews, a stenographer hired by her then-attorney to provide a transcript of Judge Pearson's in-person deposition taken on February 13, 2024, as part of the discovery process in CJD 2023-005.

(ECF No. 12 ¶¶ 101-172.)[3]  Ms. Ademiluyi alleges that at the deposition, Judge Pearson denied certain "falsehoods" included in Investigative Counsel's written interview summary, but that Ms. Andrews fabricated the transcript to exclude such denials.  (ECF No. 12 ¶¶ 106, 110.)  Ms. Ademiluyi further claims that Ms. Andrews's corruption "helped her coconspirators succeed in their plans to viciously attack [her]" and that "[t]hey revictimized her, attempted to discredit her rape experience, asserted mental instability, and inflicted severe emotional distress."  (ECF No. 12 ¶¶ 128, 162.)  Throughout Count II, Ms. Ademiluyi also makes salacious, superfluous, and utterly groundless personal allegations against the Judge Defendants and others.  (ECF No. 12 ¶¶ 120-172.)  She requests compensatory damages, punitive damages, and attorneys' fees.  (ECF No. 12, at 34.)

In Count III, Ms. Ademiluyi alleges intentional infliction of emotional distress.  (ECF No. 12, at 35.)  She claims the existence of a conspiracy "to intentionally inflict severe emotional distress on [her] through making, endorsing, or using the fabricated deposition transcript."  (ECF No. 12 ¶ 174.)  She further claims that this was a "criminal conspiracy" to cause her "severe emotional distress and job loss," which ultimately led to her experiencing "severe depression and anxiety . . ."  (ECF No. 12 ¶¶ 175, 177.)  She requests compensatory damages, punitive damages, and attorneys' fees.  (ECF No. 12, at 35.)

## ARGUMENT

### I.  STANDARD OF REVIEW.

Under Rule 12(b)(1), a plaintiff must prove the existence of subject matter jurisdiction.  *Demetres v. East W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).  "[S]overeign immunity

---

[3] Ms. Ademiluyi's titling of this section as "Claims Against the Court Reporter" suggests that it is brought only the Ms. Andrews, although it is not entirely clear.  (ECF No. 12, at 21.)

deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. General Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citations omitted).

Under Rule 12(b)(6), a complaint is properly dismissed if it fails to state a claim upon which relief can be granted. A complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausibility" standard for complaints demands "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79 (2009).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). In addition to considering the complaint itself, the Court can consider "matters of public record . . . that are integral to the complaint and of unquestioned authenticity." *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017) (citations omitted).

## II.   ALL CLAIMS AGAINST THE JUDGE DEFENDANTS ARE BARRED BY CLAIM PRECLUSION.

The doctrine of res judicata, or claim preclusion, bars all the claims brought against the Judge Defendants in this suit because Ms. Ademiluyi was required "to advance in a single action

all of the legal theories and demands for relief arising out of the same cause of action." *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022) (citations omitted). Res judicata is not "a technical rule," but rather "a rule of fundamental and substantial justice of public policy and private peace." *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989). Its purpose is to "foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions," *Montana v. United States*, 440 U.S. 147, 153-54 (1979), as well as to "bar[] vexatious litigation, and free[] the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). It does this by "prevent[ing] litigation of all grounds for . . . recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id*.

Ignoring Ms. Ademiluyi's red herrings, this suit and the Albright Suit arise from the same set of facts. In both suits, Ms. Ademiluyi seeks relief from alleged circumstances in which she claims the Judge Defendants conspired with others and retaliated against her by providing information related to her judicial unfitness. (Case No. 8:23-CV-03526-LKG, ECF No. 11, at 6-10 and ECF No. 12, at 10-20). All of the claims that Ms. Ademiluyi now raises as grounds for recovery in this suit were available to her when she filed the operative complaint in the Albright Suit on May 16, 2024. (Case No. 8:23-CV-03526-LKG, ECF No. 11; ECF No. 12.)

In the Albright Suit, Ms. Ademiluyi brought a First Amendment retaliation claim based on the Judge Defendants' same alleged acts that she now alleges here. (Case No. 8:23-CV-03526-LKG, ECF No. 11.) And to the extent that Ms. Ademiluyi had alternative theories about the Judge Defendants' alleged motive(s) for such alleged acts, nothing prevented her from presenting such alternate theories in the Albright Suit. As to the tort claims, these claims were available to Ms. Ademiluyi when she filed her second amended complaint and nothing prevented her from raising

them therein, as all of the factual allegations pertinent to the tort claims occurred before she filed

the second amended complaint in the Albright Suit on May 16, 2024.  (ECF No. 12.)

**III.    THE FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED.**

The First Amendment claim must be dismissed because, in addition to being barred by

claim preclusion, it is barred by issue preclusion, it is barred by judicial immunity, and it fails to

set forth a viable cause of action.  In this claim, Ms. Ademiluyi alleges that the Judge Defendants

retaliated against her by "mischaracterizing [her] performance and character for the purpose of

causing charges to be initiated [against her] and pursuing the CJD 2022-079 and 2023-005 cases."

(ECF No. 12 ¶ 97.)

### A.    The First Amendment Claim is Barred by Issue Preclusion.

This claim is barred by issue preclusion, or collateral estoppel, which "operates to bar

subsequent litigation of those legal and factual issues common to both actions that were actually

and necessarily determined by a court of competent jurisdiction in the first litigation."  *Orca*

*Yachts, L.L.C. v. Mollicam, Inc*., 287 F.3d 316, 318 (4th Cir. 2002).  In the Albright Suit, after full

briefing on the Judge Defendants' motion to dismiss, this Court found that the Judge Defendants

are entitled to absolute immunity for their acts related to participating in Ms. Ademiluyi's

disciplinary matters.  *Albright*, 2025 WL 754485, at *10-11.  As such, the current claim based on

the same acts is barred by issue preclusion.

### B.    The First Amendment Claim is Barred by Judicial Immunity.

Even if the Court does not apply preclusion, the same judicial immunity analysis from the

Albright Suit is appropriately applied to this claim and the Judge Defendants are entitled to

absolute immunity from this suit's First Amendment claim.  *See Albright*, 2025 WL 754485, at

*10-11 (finding Judge Defendants absolutely immune from claim based on same conduct).  Here,

Ms. Ademiluyi alleges that the Judge Defendants provided information to judicial disciplinary

authorities about her conduct.  (ECF No. 12 ¶ 97.)  As in the Albright Suit, these are "official acts that fall within the scope of their professional duties as judicial officers," to which absolute immunity applies.  *Albright*, 2025 WL 754485, at *10.

The Maryland Code of Judicial Conduct (the "Judicial Code") mandates a judicial responsibility to inform the Commission of facts that may raise a substantial question as to another judge's judicial fitness.  Md. Rule 18-102.15(b).  It also mandates participation in disciplinary matters.  Md. Rules 18-102.16(a).  That is, the Judge Defendants had a specifically delineated judicial responsibility to perform the alleged acts for which they are now being sued, *i.e.*, to inform the Commission of concerns about judicial fitness and participate in the disciplinary process.  Because the alleged at-issue actions were taken within the scope of the Judge Defendants' judicial responsibilities, the Judge Defendants are absolutely immune from a suit based on them.  *See Albright*, 2025 WL 754485, at *10-11; *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 356 (E.D. N.Y. 2004) (judges "absolutely immune from suit for any actions taken within the scope of their judicial responsibilities") (citing *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991)); *Herring v. Gorbey*, No. CV 17-278, 2017 WL 5885668, at *5 (E.D. Pa. Nov. 27, 2017) (citing the ABA Model Rules and explaining that "taking action to address known misconduct is a judge's obligation" and finding judge "acted within her judicial capacity by reporting [the plaintiff] to the Disciplinary Board").

The application of absolute immunity to the Judge Defendants' alleged actions here is clearly "justified by overriding considerations of public policy."  *Forrester v. White*, 484 U.S. 219, 224 (1988).  Under the functional approach taken to assess immunity, the federal courts "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted," and then "evaluate the effect that exposure to particular forms of liability would likely

have on the appropriate exercise of those functions." *Id*. Here, the State entrusts its judges with "interpret[ing] and apply[ing] the law that governs our society." Md. Rule 18-100.4(a). This grave responsibility requires "[a]n independent, fair, competent, and impartial judiciary composed of individuals of integrity." *Id*. The Judicial Code "establishes standards for the ethical conduct of judges." Md. Rule 18-100.4(c). It is guided by the principle "that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system." Md. Rule 18-100.4(a). The Judicial Code regulates judicial conduct through disciplinary agencies, Md. Rule 18-100.4(c), and mandatory reporting to the Commission is an integral part of the process, Md. Rule 18-102.15(b). If judges fear legal liability for reporting the questionable fitness of other judges, the entire process would be undermined. *See King v. Myers*, 973 F.2d 354, 359 (4th Cir. 1992) (explaining purpose of doctrine of judicial immunity as "protecting the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences'") (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

The Judge Defendants are further entitled to absolute immunity because the alleged acts stem directly from their roles as alleged informants and witnesses in Ms. Ademiluyi's judicial disciplinary matter. *See* ABA Model Rules for Judicial Disciplinary Enforcement, Rule 12 (communications and testimony to judicial disciplinary bodies should be "absolutely privileged, and no civil lawsuit predicated thereon may be instituted against any complainant or witness"); *see also Mathis v. Goldberg*, 538 F. App'x 310, 311 (4th Cir. 2013) (witnesses "absolutely immune from damages for their testimony given in legal proceedings"); *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (witness sued under § 1983 "has absolute immunity with respect to any claim based on the witness's testimony") (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)). Because a

"loser in one forum" often seeks another forum and then accuses the "participants in the first with unconstitutional animus . . . [a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978) (citations omitted).

### C.    The Amended Complaint Fails to State a Claim of First Amendment Retaliation.

The amended complaint does not sufficiently plead a claim of First Amendment retaliation against the Judge Defendants.  To properly state such a claim, Ms. Ademiluyi needed to allege that "(1) [she] engaged in protected First Amendment activity, (2) the [Judge Defendants] took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the [Judge Defendants'] conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (citations omitted).

Ms. Ademiluyi alleges that the Judge Defendants' retaliatory actions were those of "mischaracterizing [Ms.] Ademiluyi's performance and character for the purpose of causing charges to be initiated [against her] and pursuing the CJD 2022-079 and 2023-005 cases."  (ECF No. 12 ¶ 97.)  Seemingly related to this claim, Ms. Ademiluyi also alleges that "[i]n retaliation for [her] complaint to the FBI, the charges of CJD2022-079 became public."  (ECF No. 12 ¶ 76.)

Preliminarily, as a matter of law, Ms. Ademiluyi cannot demonstrate that the Judge Defendants took any actions related to determining whether her disciplinary matters would be initiated, *see* Maryland Rule 18-421 (outlining the case initiation process, which is controlled exclusively by the Commission and Investigative Counsel), took any actions related to determining whether her disciplinary matter would be pursued, *see* Maryland Rules 18-422, 18-423, 18-431, 18-433, and 18-434 (outlining the detailed procedures in which Investigative Counsel, the Judicial Inquiry Board, and Commission determine whether to pursue disciplinary matters), or took any

16

actions related to her disciplinary charges becoming public, *see* Maryland Rule 18-407 (outlining when and how judicial disciplinary matters become public). The decisions and actions that determined the procedural route of Ms. Ademiluyi's disciplinary matters were not, and cannot possibly be, as a matter of law, the decisions or actions of the Judge Defendants.

Considering this, the Judge Defendants' only at-issue actions were their alleged actions of making statements about Ms. Ademiluyi's conduct to the judicial disciplinary authorities. (ECF No. 12 ¶ 97.) And because those actions, *on their own*, had no punitive effect on Ms. Ademiluyi, she does not and cannot sufficiently plead an adverse action for First Amendment retaliation purposes. *See Bhattacharya v. Murray*, 93 F.4th 675, 689 (4th Cir. 2024) (report of unprofessional conduct not adverse action where action may have prompted review of the conduct, but it did not *on its own* contain a punitive effect); *Velez v. Levy*, 401 F.3d 75, 99 (2d Cir. 2005) (where defendants had no legal authority to oust board member, but rather "set into motion" an investigation of the board member's conduct, "those actions cannot support a First Amendment retaliation claim."). As outlined in detail above, the filing of a complaint is but one of many steps in the State's judicial disciplinary process. In Ms. Ademiluyi's disciplinary matter, any punitive effect came only after many layers of procedural process, and it was the result of numerous factors wholly unrelated to the Judge Defendants' alleged complaints and/or participation. *See generally Matter of Ademiluyi*, 488 Md. 45 (2024).

The amended complaint also does not plead a sufficient causal relationship between Ademiluyi's purported protected activity and the Judge Defendants' alleged actions. Under the applicable burden-shifting framework, Ademiluyi had a "prima facie burden to show that her purportedly protected activity was 'a substantial or motivating factor'" in the [Judge Defendants'] action[s]." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citations omitted). This initial

burden required her to demonstrate that the Judge Defendants were aware of Ademiluyi's purportedly protected activity, and that "some degree of temporal proximity suggest[ed] a causal connection." *Id*. at 130-31 (citation omitted).

Ms. Ademiluyi alleges in this suit that because she reported to the FBI an alleged harassment conspiracy perpetrated against her by a Florida inmate and "a judge," the Judge Defendants reported her to judicial disciplinary authorities. (ECF No. 12 ¶¶ 94-95, 97.) This claim lacks the degree of temporal proximity that could suggest any causal connection. Ms. Ademiluyi alleges that Judge Tillerson Adams first reported her to judicial disciplinary authorities in August 2021 (ECF No. 12 ¶ 49), which was before she alleges she filed her report with the FBI in October 2021 (ECF No. 12 ¶ 94). And based on Ms. Ademiluyi's own assertions, at the time of the Judge Defendants' allegedly retaliatory acts, they had not yet acquired knowledge of Ms. Ademiluyi's purported First Amendment act. Ms. Ademiluyi alleges the Judge Defendants learned about her report to the FBI on or after January 21, 2023, when she told Judge Pearson about it in an email, and he then discussed it with Judge Tillerson Adams and Judge Cotton. (ECF No. 12 ¶¶ 63, 65.) This alleged knowledge acquirement came after she alleges the Commission began investigating her, on June 30, 2022, in connection with her second matter that ultimately led to her removal (ECF No. 54), and after she alleges Judge Pearson provided oral statements to judicial disciplinary authorities on January 10, 2023, and January 20, 2023 (ECF No. 12 ¶ 70). In other words, if the allegations are accepted as true, the purported First Amendment act here could not have plausibly caused the Judge Defendants' alleged retaliatory acts.

Relatedly, Ms. Ademiluyi fails to plausibly allege how her FBI report was a substantial or motivating factor in the Judge Defendants' participation in her disciplinary matters. Ms. Ademiluyi does not identify the judge she suspected of conspiring against her with the Florida

inmate, nor otherwise make any plausible connection between the suspicions she reported to the FBI and the Judge Defendants.

## IV.    THE JUDGE DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY, OR IN THE ALTERNATIVE, QUALIFIED IMMUNITY.

The Judge Defendants are also entitled to sovereign immunity or, alternatively, to qualified immunity.  As to sovereign immunity, although this is labeled as a "personal capacity" suit, that label is not dispositive.  *See Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018) ("mere incantation" of term not enough to transform official into individual capacity (internal citations omitted)).  And the suit is more properly interpreted as an official capacity suit, thus entitling the Judge Defendants to sovereign immunity.  *See Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014) (sovereign immunity applied to officials sued in individual capacity).  Alternatively, the Judge Defendants are entitled to qualified immunity, which protects government officials from liability when their "conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014).  Qualified immunity is not only a defense to liability, but "also intended to free officials from litigation concerns and disruptive discovery."  *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (citations omitted).  Here, the Judge Defendants' alleged at-issue acts of providing information to judicial disciplinary authorities about Ms. Ademiluyi's alleged misconduct did not violate any clearly established constitutional rights that could defeat qualified immunity.

## V.    THE JUDGE DEFENDANTS ARE ENTITLED TO STATE PERSONNEL IMMUNITY.

As to the claims brought under Maryland law, the Judge Defendants are also entitled to State personnel immunity for acts that were taken within the scope of their public duties.[4]  Md.

---

[4] For immunity purposes in intentional tort actions under Maryland law, it is immaterial whether the public official is sued in an official or individual capacity.  *Higginbotham v. Pub. Serv. Comm'n of Maryland*, 412 Md. 112, 130 (2009).

Code Ann., State Gov't §§ 12-101, 12-105.  Pursuant to the Maryland Torts Claims Act ("MTCA"), the Judge Defendants are "State personnel," State Gov't § 12-101(a)(11), who are immune from tort liability for such acts if they are taken without malice or gross negligence, Md. Code Ann., Cts. & Jud. Proc. § 5-522(b).

This immunity applies here because Ms. Ademiluyi's claims stem directly from the Judge Defendants' roles as complainants and witnesses in her judicial disciplinary matters[5] (ECF No. 12, at 21-35), and those acts were taken within their official duties, *see* Md. Rule 18-102.15(b) (outlining judges' duty to report misconduct to judicial disciplinary authorities) and Md. Rule 18-102.16(a) (outlining judges' duty to participate in disciplinary matters).  Further, Ms. Ademiluyi does not sufficiently plead malice against the Judge Defendants.  *See Bord v. Baltimore County*, 220 Md. App. 529, 557-58 (2014) ("A conclusory allegation that a public official acted 'maliciously,' without any supporting allegation of fact, is insufficient to defeat a motion to dismiss on the ground of public official immunity."); *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984) ("To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts" that support the plaintiff's claims against the defendant.).

## VI.    THE AMENDED COMPLAINT FAILS TO SUFFICIENTLY PLEAD ANY TORT CLAIM AGAINST THE JUDGE DEFENDANTS.

Preliminarily, based on its own headings, the amended complaint does not state any tort claim against the Judge Defendants.  (ECF No. 12, at 20-21.)  Prior to Count I, the amended complaint provides a heading stating, "claim against the judges in their individual capacity," under which it lists only the claim for First Amendment retaliation.  (ECF No. 12, at 20.)  Prior to Count

---

[5] The tort claims are difficult to decipher, but include allegations related to the Judge Defendants' official duties under Maryland Rules 18-100.4(c) and 18-102.15(b)(1).

II, the amended complaint provides a heading stating, "claims against the court reporter," under which it then lists the tort claims.  (ECF No. 12, at 21, 35.)

As another preliminary and general matter, even if the tort claims are interpreted as claims against the Judge Defendants, they fail to plead any viable cause of action against the Judge Defendants because they lack "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). And as further outlined more specifically below, each claim should be dismissed because each also fails to sufficiently plead various required elements.

### A.  The Amended Complaint Fails to Sufficiently State a Claim of Tortious Inference with a Contract.

Under Maryland law, tortious interference with a contract requires:  (1) a contract between the plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional interference with the contract, (4) breach of the contract, and (5) damages.  *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 466 (1991).  Here, the amended complaint puts at issue an alleged business relationship between Ms. Ademiluyi and Planet Depos (ECF No. 12, at 21-34), in which Ms. Ademiluyi alleges to have hired Planet Depos to provide transcription services at the in-person depositions of Judge Cotton and Judge Pearson, as part of the discovery process in Ms. Ademiluyi's third disciplinary matter, CJD 2023-005 (ECF No. 12 ¶¶ 101, 159).

The intentional inference element fails here because there are no facts or allegations offered to suggest that the business relationship between Ms. Ademiluyi and Planet Depos was the target of the alleged interference.  *See Medical Mut. Liab. Soc. of Maryland v. B. Dixon Evander & Assocs., Inc.*, 339 Md. 41, 54 (1995) ("In order to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction

21

of the business relationship which was the *target* of the interference.") (emphasis added)*; K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 158-59 (1989) (finding no tort because no purpose or motive that aligned with the alleged interference).  To the contrary, the amended complaint protractedly alleges that the target of the alleged interference was Ms. Ademiluyi's professional reputation and judgeship.  (ECF No. 12 ¶¶ 110, 120, 128.).

Relatedly, the amended complaint fails to sufficiently plead a breach of contract or harm to any business relationship or economic relations[6] between Ms. Ademiluyi and Planet Depos.  Based on Ms. Ademiluyi's own assertions, she received from Planet Depos transcripts of both in-person depositions, as well as extensive customer service after the depositions.  (ECF No. 12 ¶¶ 107, 109, 112-114, 117; ECF No. 23.)  And as to any other economic relations between Ms. Ademiluyi and Planet Depos, the amended complaint is completely devoid any facts or allegations that would suggest such relationship existed.

The amended complaint further fails to sufficiently allege how the alleged alterations to Judge Pearson's deposition transcript resulted in the alleged injury.  *See B. Dixon Evander*, 339 Md. 41, 54 (1995) ("In any tort action, the plaintiff must establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought."); *see also Rite Aid Corp. v. Lake Shore Invs.*, 298 Md. 611, 622 (1984) (listing possible types of reasonable damages). The amended complaint alleges interference with the at-issue contract through fabrication of Judge Pearson's deposition transcript, which allegedly "caused [Ms.] Ademiluyi to experience reputational harm, anxiety, depression, emotional distress, attorney fees, and costs."  (ECF No. 12 ¶ 163.)  As the amended complaint itself outlines, however, Judge Pearson's at-issue deposition

---

[6] This tort encompasses a breach of contract or more generally, "interference with economic relations."  *Lake Shore Invs. v. Rite Aid Corp.*, 67 Md. App. 743, 753 (1986).

was taken within discovery in Ms. Ademiluyi third disciplinary matter, CJD 2023-005 (ECF No. 12 ¶ 101), which is separate and apart from the second disciplinary matter that resulted in her public removal from the bench, CJD 2022-079 (ECF No. 12 ¶ 90).  Judge Pearson did not testify in CJD 2022-079.  *Ademiluyi*, 488 Md. 45; *see also, supra*, note 4.  And his at-issue deposition testimony is now seemingly without any consequence because CJD 2023-005 appears to be indefinitely stayed.  *Id*.  In other words, if the Court accepts as true the actual facts in Ms. Ademiluyi's own pleading—rather than its baseless conclusory statements—there is no connection between the alleged deposition testimony fabrication and the injury alleged here.

**B.**    **The Amended Complaint Fails to State a Claim of Intentional Infliction of Emotional Distress.**

Intentional infliction of emotional distress "is disfavored in Maryland, difficult to establish, and is rarely viable." *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023) (internal quotation marks and citations omitted).  The Supreme Court of Maryland has "made it clear that liability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves."  *Caldor, Inc. v. Bowden*, 330 Md. 632, 642 (1993) (internal quotation marks and citations omitted).  It requires pleading, *with specificity*: (1) intentional or reckless conduct, (2) extreme and outrageous conduct, (3) a causal connection between the conduct and emotional distress, and (4) severe emotional distress.  *Lilly*, 694 F. Supp. 3d at 596.

Here, the amended complaint alleges without actual facts and in a conclusory fashion that Judge Cotton and Judge Pearson[7] conspired with Ms. Andrews to "intentionally inflict severe

---

[7] If, somehow, this claim survives, Judge Tillerson Adams should be dismissed as a defendant in this claim, as Ms. Ademiluyi makes no allegations against her here.

emotional distress on [Ms.] Ademiluyi through making, endorsing, or using the fabricated deposition transcript." (ECF No. 12 ¶ 174.)

The amended complaint fails to plead the requisite outrageous conduct.  Ms. Ademiluyi was required to allege facts that "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 60 (1986).  The defendants' conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bailey v. Budget Rent a Car Sys.*, *Inc.*, No. CV ELH-16-00636, 2016 WL 1721386, at *5 (D. Md. Apr. 29, 2016) (internal quotation marks and citations omitted).  Even if accepted as true, altering a deposition transcript does not meet this standard.

The amended complaint also fails to plausibly plead a sufficient causal connection between this alleged transcript alteration and Ms. Ademiluyi's alleged injury.  Ms. Ademiluyi claims that this alleged transcript conspiracy caused her "severe emotional distress and job loss, which she claims, "was extreme and outrageous" and exacerbated her emotional distress, depression, and anxiety. (ECF No. 12 ¶¶ 175, 177.)  These are purely conclusory statements.  Based on the actual facts alleged in the amended complaint, Judge Pearson's deposition testimony was wholly unrelated to the public disciplinary matter that resulted in Ms. Ademiluyi's removal from the bench and there can be no causal connection.  *See supra*, Section VII.

## CONCLUSION

The motion to dismiss should be granted and this matter should be dismissed in its entirety with prejudice.  In the alternative, the Judge Defendants should be dismissed as defendants.

Respectfully submitted,

Anthony G. Brown
Attorney General of Maryland

/s/ Kathryn Hummel

_____

Kathryn Hummel
Federal Bar No. 21991
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland  21202
khummel@oag.state.md.us
(410) 576-6341
(410) 576-6055 (facsimile)

*Attorneys for Defendants*
*Judge Sheila Tillerson Adams,*
*Judge DaNeeka V. Cotton, and*
*Judge Michael R. Pearson*